UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

      -v-                                             85 Cr. 139 (KTD)

CARMINE PERSICO,                     REPLY MEMORANDUM
                      Defendant.
------------------------------------------------------------X

### PRELIMINARY STATEMENT

Carmine Persico has challenged the constitutionality of his 100-year sentence pursuant to Former Federal Rule of Criminal Procedure 35(a). Specifically, Mr. Persico alleged that his 100-year sentence was "illegal," because the sentence imposed by the Court was (1) "substantively unreasonable" under the Sixth Amendment, (2) predicated upon a number of factual inaccuracies in violation of the Fifth Amendment's Due Process Clause, and (3) constitutionally defective as a result of the Government's failure to disclose favorable information under *Brady v. Maryland*, 373 U.S. 83 (1963).

In his moving papers, Mr. Persico provided the Court a wellspring of previously undisclosed *Brady* evidence demonstrating the falsity of murder accusations that were the predicate for his de facto 100-year sentence, and further, that he was innocent of the pivotal allegation that he was the "boss" of the Colombo crime family and a member of the Mafia's "Commission" between 1972 to 1985. *See* Persico Motion 1-68, Exhibits 1-44.

In response, the Government ignores the specific issues raised by Mr. Persico's motion and seeks to bolster its position by distorting the record. As Mr. Persico explains below, the Government's interpretation of controlling precedent is incorrect and its factual arguments are unsupported. Neither the law nor human decency supports the Government's quest to continue the unjust term of imprisonment rendered in this case.

A. <u>The Court Should Decide the Merits of Mr. Persico's Motion</u>

The Government secured Mr. Persico's 100-sentence by engaging in tactics that destroy the most fundamental principles of justice and fairness. At all times, the Government administered justice with respect only to the name of the accused, leaving its oath to support the Constitution of the United States second to its courtroom success.

The Government's concealment of favorable evidence in Mr. Persico's case was not inadvertent. The Government consciously disregarded its *Brady* obligation during the sentencing phase of Mr. Persico's case, withholding numerous pieces of exculpatory information that would mitigate his sentencing culpability. As a result, Mr. Persico could not fairly challenge the Government's quest that he be sentenced to serve the rest of his life in prison.

Specifically, the Government withheld evidence proving that Mr. Persico was not the "boss" of the Colombo family from 1972 to 1985. The Government withheld evidence proving that Mr. Persico was innocent of committing numerous acts of murder and violence, including the triple murder involving Carmine Galante. The Government withheld evidence proving that the basis of its sentencing accusations was attributable solely to the unreliable word of serial killer Gregory Scarpa, Sr.--who had falsely implicated Mr. Persico in being responsible for murders that Scarpa had committed.

Twenty-nine years later, the Government remains accountable to the Court for its actions and the man that it seeks to keep imprisoned for perpetuity. The Government cannot escape its duty to seek justice at all times and to ensure that a man sentenced to serve 100-years in prison was afforded a fair sentencing hearing untainted by false allegations and *Brady* violations.

The Government offers no legitimate reason for the Court not to exercise its

2

broad discretion to review the constitutionality of Mr. Persico's sentence based upon the claims now set before it. No Court has previously decided the issues set forth in Mr. Persico's motion, because the *Brady* evidence now presented by Mr. Persico was not revealed until decades after his conviction became final.[1]

Regrettably, the Government repeatedly misinforms the Court that Mr. Persico's claims have "been presented previously and rejected." *See* Gov't Resp. 1, 7-8. The Government fruitlessly urges the Court to rely upon the disposition reached in a twenty-two year old motion filed by Mr. Persico in an unrelated case, although there are no substantive similarities between that disposition with the *Brady* issues now presented by Mr. Persico's current motion.[2] The Government presents no support for its contention other than relying upon Mr. Persico's prior claim of being innocent in the murders of Thomas Spero and Mary Bari.

In 1993, however, Mr. Persico did not possess evidence proving that the Government, during the sentencing phase of his case, was well aware that others had committed the murders in question. *See* Persico Motion 38-40. Surely, the Court that heard Mr. Persico's plea of innocence twenty-two years ago was never made aware that FBI Agent DeVecchio had intentionally concealed exculpatory information proving "that the hits on Ralph and Shortie Spero (sic) were carried out by Genovese member Jerry Pappa, as a result of extensive junk deals with Ralph Spero." FBI Memorandum, dated 10/8/1980 (Persico Motion at Exhibit 42, p. 2). Nor was the Court informed that FBI

---

[1] In 2015, Mr. Persico was provided some of the undisclosed FBI reports through requests made pursuant to the Freedom of Information Act (FOIA).

[2] The Government fails to explain how Mr. Persico's current *Brady* claims are resolved by the Court's 1993 decision denying relief based upon allegations of misconduct by former AUSA Rudolph Giuliani. *See* Gov't Resp. 7-8.

agent DeVecchio had successfully conspired with Gregory Scarpa Sr., to kill Mary Bari, and later shifted blame for the murder to Mr. Persico. *See* Persico Motion 38-40, 52.

Furthermore, the Court was never told that FBI agent DeVecchio had intentionally concealed numerous pieces of *Brady* evidence proving that in 1973 the "Commission," led by Carlo Gambino, appointed Thomas Di Bella as the official "boss" of the Colombo family and did not request that he step down from that position until November 5, 1980, which was several months after Carmine Galante was murdered. *See* Persico Motion at 24-30, Exhibits 13-32.

Ultimately, the 1993 disposition of Mr. Persico's twenty-two year old motion, dealing with matters that are substantively irrelevant to the issues presented here, only highlights the degree of fraud and misconduct perpetrated by Government officials over the past twenty-nine years. Rather than relent from its falsehoods, the Government opposed Mr. Persico's prior request in 1993 to be exonerated of these false murder accusations and continued to suppress key *Brady* evidence that proved his claim to be meritorious. Consequently, the Government has misdirected the Court's attention to a proceeding that accords no just result to dispose of the instant motion.

In addition, the Government's attempt to fault Mr. Persico for failing to bring his claims sooner is meritless. The Government's long-lasting disregard of its *Brady* obligation interfered with Mr. Persico's ability to (1) present mitigating evidence at the time that he was sentenced (2) reveal the falsity of the Government's accusations concerning his alleged criminality, and (3) sooner remedy the illegality of his sentence under both the Fifth and Sixth Amendment of the United States Constitution.

The Government should not be permitted to use its wrongdoing as a shield to bar Mr. Persico's claims from being decided on the merits. Moreover, the Government's

4

extensive reliance on the Second Circuit's "summary order" in *United States v. Finkielstain*, 293 F. App'x 62 (2d Cir. 2008) provides no support for such an unjust disposition of Mr. Persico's motion. *See* Gov't Resp. 6-8.

In *Finkielstain*, the Second Circuit did not hold that the passage of time will be a decisive factor when a petitioner has been deprived an "ample opportunity to challenge the legality of his sentence" due to the Government's intentional wrongdoing. Unlike Mr. Persico, the petitioner in *Finkielstain* was not challenged by the Government's systemic concealment of *Brady* evidence and "had ample opportunity to challenge the legality of his sentence" during the years between his sentence and motion--supporting the "district court's exercise of discretion not to review the sentence in light of the passage of time." *Id.*

Similarly, the Government futilely suggests that Mr. Persico's due process claims are somehow not cognizable under Former Rule 35(a) and precluded by the 120-day time limit imposed under Former Rule 35(b). The Government overlooks the critical fact that it is the substance of the undisclosed *Brady* evidence that proves the falsity of the information submitted by the Government during the sentencing phase of Mr. Persico's case. Mr. Persico could not have brought his due process claims in an earlier motion, because he could neither know nor fairly argue that he was entitled to relief under Former Rule 35(a) until the *Brady* evidence suppressed by the Government was made available to him.

Ultimately, Mr. Persico must be afforded the opportunity to have his claims adjudicated by the Court, because his twenty-nine year call for justice was hampered by the Government's reckless and intentional suppression of *Brady* evidence. Accordingly, considerations of justice militate strongly in favor of the Court exercising its broad discretion to determine the merits of Mr. Persico's motion.

B.     <u>The Court Should Grant Mr. Persico's Request for Relief</u>

To date, the Government has not denied that it failed to comply with its *Brady* obligations or that the evidence withheld was material to the sentencing phase of Mr. Persico's case. Rather, the Government argues that Mr. Persico's *Brady* claims should be dismissed, because it believes such claims are not cognizable under Former Rule 35(a) and constitute an "impermissible attack on his conviction." *See* Gov't Resp. 13-15. Relying exclusively on a 1990 "unpublished disposition," the Government inaccurately represents that the "Ninth Circuit had explicitly rejected the attempt to import Brady claims into a Former Rule 35 motion." Gov't Resp. at 14-15 (citing *United States v. Brown*, 907 F.2d 155 (Table), 1990 WL 95398 (9th Cir. July 11, 1990)).

However, the Ninth Circuit's "unpublished disposition" in *Brown* is neither truly representative of that Court's position[3] nor dispositive of whether *Brady* claims can be imported into a Rule 35(a) motion. The Ninth Circuit did not explicitly hold that *Brady* claims could never be a basis for relief pursuant to Former Rule 35. Instead, the Circuit explained in *Brown* that the petitioner's specific *Brady* claims were not cognizable under Rule 35, because the alleged violations, which were not disclosed by the record, *occurred, if at all, prior to sentencing*," and did not "*concern the legality of the sentence itself.*" *Id.* (emphasis added).

Unlike the petitioner in *Brown*, Mr. Persico's *Brady* allegations remain undisputed and directly attack the substance and constitutional integrity of what occurred during the sentencing phase of his case. Specifically, the Government's concealment of evidence in violation of its *Brady* obligation worked to obscure the truth-seeking process during Mr.

---

[3] Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should generally not be cited unless permitted by exception.

6

Persico's sentencing and undermined the constitutional integrity of the punishment imposed. Cumulatively, the *Brady* evidence would mitigate the severity of Mr. Persico's sentence, and as a result, "*concern[s] the legality of the sentence itself.*" *Id.* (emphasis added). [4]

Overall, the Government offers no explanation for its failure to disclose highly exculpatory evidence proving that Mr. Persico was factually innocent of the key sentencing allegations argued by trial prosecutors to both the U.S. Department of Probation and the sentencing judge. [5] Significantly, the Government does not address the numerous undisclosed FBI reports that would have demonstrated the falsity of its sentencing arguments that Mr. Persico was the "boss" of the Colombo family from 1972 to 1985, and had participated in, among other uncharged acts of violence, a murder conspiracy involving Carmine Galante in 1979. [6] Had these reports, which were of considerable significance in view of the judge's findings, been furnished to the Court, they would have called into question the veracity of the Government's key sentencing position.

Rather than address these issues, the Government attempts to advance

---

[4] Notably, the Government also omits that *Brown* was decided before the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)--which was a time when a prisoner enjoyed the ability to seek habeas relief at *any time*. In *Brown*, the Ninth Circuit did not consider the time limitations now imposed by the AEDPA when observing that the petitioner's specific *Brady* claims may be better addressed by section 2255, because "it covers a broader field of collateral attack upon the validity of a conviction or sentence." *Id.* The Ninth Circuit could not foresee, at such time, that the new time limits of AEDPA may have precluded the petitioner in *Brown* from seeking relief in the habeas forum if his *Brady* violations were discovered more than a year after his conviction became final.

[5] The fact that the Government has not provided a substantive answer to address any of the specific allegations raised in Mr. Persico's motion militates in favor of his request that the Court order an evidentiary for further fact-finding.

[6] The Government has offered no explanation for it decision to falsely accuse Mr. Persico of committing murders that were known to have been committed by other individuals, and in one instance, actually committed by FBI Agent DeVecchio and his serial killer informant, Gregory Scarpa, Sr. *See* Persico Motion at 38-40.

distinctions between the sentencing transcript and Mr. Persico's motion that are substantively without difference.[7] *See* Gov't Resp. at 10. However, there is simply no reasonable dispute in law or fact regarding whether the sentencing judge placed reliance on proof regarding the "Commission's" role in the murder of Carmine Galante and other uncharged acts of "violence and murder." Sentencing Tr. 23-25. The sentencing judge clearly aligned Mr. Persico as "being an upper member of this echelon, on the board of directors that lives, succeeds on murder, violence and threats of murder and violence and retiring, as I say, when circumstances permit, to the estate at Saugerties." *Id.* at 24-25.

Pointedly, the Second Circuit understood that proof concerning Carmine Galante's murder was introduced as being conduct relevant to the Commission's affairs, and the sentencing judge considered such proof highly significant in its determination of imposing a 100-year sentence. *United States v. Salerno*, 868 F.2d 524, 533-34 (2d Cir. 1989) (holding that "there was adequate evidence to support the jury's determination that the Galante murders occurred 'in the conduct of [the Commission's] affairs'"); *Id.* at 545-46 (Bright, dissenting) (observing that proof regarding the Galante murder rested upon nothing more than an analogy to the movie, "The Godfather," and "*a movie script does not constitute the kind of proof required to sentence men to prison for one hundred years*") (emphasis added).

Ultimately, the Government's attempt to now circumvent the facts of its case and sentencing arguments is futile. *See* Gov't Resp. at 10 (alleging inaccurately that during

---

[7] The Government also creates the false impression that certain facts are omitted from Mr. Persico's moving papers. *See* Gov't Response at 12 (alleging incorrectly that "[w]hat Persico does not say is that Judge Owen did reject the Government's sentencing memorandum and did not rely on it whatsoever"); *compare to* Persico Motion at 17 (representing accurately that the "the Court claimed that the 100-year sentence imposed upon Mr. Persico was without consideration to the allegations contained in the Government's sentencing memorandum….and it was 'not relying on that in any sentence so you need not deal with anything that is in there.'")

8

sentencing proceedings the judge made "no finding and plac[ed] no reliance on proof regarding the murder of Carmine Galante"). The Government successfully invited the sentencing judge to accept its false allegation that Mr. Persico was responsible for partaking in Carmine Galante's murder, among other uncharged acts of violence and murder, and it cannot rescind its invitation twenty-nine years later. At this juncture, the Government cannot mitigate its sentencing arguments that made it improbable for the trial judge not to be influenced by improper factors in imposing sentence.[8] *See McGee v. United States*, 462 F.2d 243, 246 (2d Cir. 1972) (holding that although it "is impossible to determine from the judge's remarks in imposing sentence whether he was at least in part influenced….certain factors indicate that this is quite probable").

Overall, the Government violated Mr. Persico's constitutional rights when intentionally suppressing numerous FBI reports proving that Mr. Persico was not the "boss" of the Colombo family in 1979,[9] and could not have been a member of the "Commission" when an alleged vote was taken concerning the murder of Carmine Galante. The Government had, but concealed, both documentary and source evidence proving that the "Commission" recognized another individual as "boss" of the Colombo

---

[8] The Court should resentence a criminal defendant once he has demonstrated "grave doubt as to the veracity of the information and show[s] that the court relied on that false information in determining [his] sentence." *United States v. Sanders*, 812 F. Supp. 813, 815 (N.D. Ill. 1992); *see also United States v. Harris*, 558 F.2d 366, 375 (7th Cir. 1977) (holding that a "showing of explicit reliance on improper factors or erroneous information has not invariably been held a prerequisite to sentence relief under *Townsend* and *Tucker*").

[9] The reports also demonstrate that FBI sources had not reported Carmine Persico to be the "boss" of the Colombo family until FBI Agent Lindley DeVecchio was appointed the lead agent to investigate the "Commission" and had deferred exclusively to the information provided by serial killer Gregory Scarpa. *See* Persico Motion at 22-30, 40-43.

9

family when Carmine Galante was murdered and Mr. Persico's role in the "Commission" was nonexistent during such timeframe.[10] *See* Persico Motion 22-30, Exhibits 5-33

As a result of the Government's concealment of exculpatory information, Mr. Persico was deprived of a meaningful opportunity to be heard on issues material to his sentence. As the Second Circuit has explained:

> If justice is to be done, a sentencing judge should know all the material facts....Fair administration of justice demands that the sentencing judge will not act on surmise, misinformation and suspicion but will impose sentence with insight and understanding.
> ***
> The judge, therefore, is required to listen and to give serious consideration to any information material to mitigation of punishment....This is so although the judge, in his discretion, is not required to lighten the penalty even if there are mitigating circumstances. But no man can make valid judgments without knowledge of the facts.

*United States v. Malcolm*, 432 F.2d 809, 816 (2d Cir. 1970).

In sum, the sentencing process afforded to Mr. Persico did not conform to the fundamental principles of justice. It was infected with fundamental defects caused by the Government's flagrant misconduct, and inconsistent with rudimentary demands of fair procedures. If justice was to be done here, the Court should have known of all the facts material to mitigation of punishment. Because no Court can justly sentence a man to 100-years in prison without knowledge of all the facts--so help us God.

---

[10] Subsequent to trial, the "aims of the due process restriction are to guarantee the accuracy of the sentencing process and thereby of the criminal justice system as a whole, and to help avoid the irrationality and unfairness inherent in a system in which a criminal penalty is designed for an individual whose characteristics differ from those of the person on whom punishment actually is imposed." *Moore v. United States*, 571 F.2d 179, 184 (3d Cir. 1978). In this regard, "one of the important functions of the prosecutor upon a sentence is to make sure that all information in his possession material to punishment and favorable to the accused is presented to the court and that the sentence is not based on mistakes of fact or faulty information." *Malcolm*, 432 F.2d at 818 (*citing Brady*, 373 U.S. at 87).

family when Carmine Galante was murdered and Mr. Persico's role in the "Commission" was nonexistent during such timeframe.[10] *See* Persico Motion 22-30, Exhibits 5-33

As a result of the Government's concealment of exculpatory information, Mr. Persico was deprived of a meaningful opportunity to be heard on issues material to his sentence. As the Second Circuit has explained:

> If justice is to be done, a sentencing judge should know all the material facts....Fair administration of justice demands that the sentencing judge will not act on surmise, misinformation and suspicion but will impose sentence with insight and understanding.
>
> ***
>
> The judge, therefore, is required to listen and to give serious consideration to any information material to mitigation of punishment....This is so although the judge, in his discretion, is not required to lighten the penalty even if there are mitigating circumstances. But no man can make valid judgments without knowledge of the facts.

*United States v. Malcolm*, 432 F.2d 809, 816 (2d Cir. 1970).

In sum, the sentencing process afforded to Mr. Persico did not conform to the fundamental principles of justice. It was infected with fundamental defects caused by the Government's flagrant misconduct, and inconsistent with rudimentary demands of fair procedures. If justice was to be done here, the Court should have known of all the facts material to mitigation of punishment. Because no Court can justly sentence a man to 100-years in prison without knowledge of all the facts--so help us God.

---

[10] Subsequent to trial, the "aims of the due process restriction are to guarantee the accuracy of the sentencing process and thereby of the criminal justice system as a whole, and to help avoid the irrationality and unfairness inherent in a system in which a criminal penalty is designed for an individual whose characteristics differ from those of the person on whom punishment actually is imposed." *Moore v. United States*, 571 F.2d 179, 184 (3d Cir. 1978). In this regard, "one of the important functions of the prosecutor upon a sentence is to make sure that all information in his possession material to punishment and favorable to the accused is presented to the court and that the sentence is not based on mistakes of fact or faulty information." *Malcolm*, 432 F.2d at 818 (*citing Brady*, 373 U.S. at 87).

## CONCLUSION

For the reasons set forth in Mr. Persico's opening and reply pleadings, it is respectfully submitted that the Court grant Mr. Persico relief pursuant to Fed. R. Crim. P. 35(a), or, in the alternative, permit further fact-finding pursuant to an evidentiary hearing.

Dated:   White Plains, New York
         September 15, 2015

Respectfully submitted,

*[signature]*

Anthony DiPietro, Esq.
*Counsel to Carmine Persico*
Law Office of Anthony DiPietro
15 Chester Avenue
White Plains, New York 10601
(914) 948-3242

11

## CERTIFICATE OF SERVICE

I, Anthony DiPietro, Esq., being over eighteen and not a party to the action, affirm that on September 15, 2015, I served an electronic copy, via email, of Carmine Persico's Reply Memorandum on:

AUSA Matthew Podolsky
United States Attorney's Office (S.D.N.Y.)
1 St. Andrews Plaza
New York City, NY 10007
Matthew.Podolsky@usdoj.gov

Dated: White Plains, New York
       September 15, 2015

Anthony DiPietro
*Counsel to Carmine Persico*
Law Office of Anthony DiPietro
15 Chester Avenue
White Plains, New York 10601
(914) 948-3242