UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____              │
│ DATE FILED: June 24, 2016        │
└─────────────────────────────────┘
```

----------------------------------------X
UNITED STATES OF AMERICA,             :
                                      :
                                      :    85 Cr. 139-10 (KTD)
                                      :
           - v. -                     :    **MEMORANDUM AND ORDER**
                                      :
CARMINE PERSICO,                      :
                                      :
                    Defendant.        :
----------------------------------------X

**KEVIN THOMAS DUFFY, U.S.D.J.**

This postconviction motion arises out of an extensively litigated nearly 30-year-old racketeering case concerning the "Commission of La Cosa Nostra" (the "Commission"), the "board of directors" of the American Mafia.  On November 19, 1986, following an eleven-week jury trial, defendant Carmine Persico was convicted of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), substantive violations of RICO, conspiracy to commit extortion and extortion, and aiding and abetting labor bribery violations.  Judge Richard Owen, then presiding, sentenced Persico to 100 years' imprisonment.  This case was reassigned to me on July 15, 2015. Before the Court is Persico's motion to correct his purportedly illegal sentence, pursuant to former Federal Rule of Criminal Procedure 35(a) (1985) (the "Motion").  For the following reasons, Persico's motion is DENIED.

## I.    Background

Beginning in the late 1970s, Persico was the boss of the "Colombo Organized Crime Family of La Cosa Nostra" (the "Colombo Family"), which was one of the five La Cosa Nostra families in New York (the others were the Genovese, Gambino, Lucchese, and Bonanno families).  See United States v. Salerno, 868 F.2d 524, 528 (2d Cir. 1989).  As the boss of the Colombo Family, Persico also sat on the Commission.  Id.  The Commission, controlled by the bosses of the organized crime families, acted as a ruling body over the five families in New York and was an enterprise distinct from the individual families.  The general purpose of the Commission was to resolve interfamily disputes, regulate and facilitate the relationships between and among the families, and promote and coordinate "joint ventures" between the families. Id.  The Commission also had the exclusive prerogative to approve any murders of family bosses.  Id. at 533.

On June 25, 1985, the government filed a 22-count indictment alleging racketeering acts related to three general Commission schemes.[1]  United States v. Salerno, et al., No. SSS

---

[1]  In a separate case, Persico and thirteen individuals were charged in a superseding indictment filed on April 4, 1985, with conspiring to participate and participating in the affairs of the Colombo Family enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c), (d) (1982). Persico was also charged with substantive counts of extortionate conspiracy and extortion, labor bribery, official bribery, loansharking, and gambling.  See United States v. Persico, et

85 Cr. 139 (the "Commission case").  The first scheme, which involved Persico and all of the defendants except Anthony Indelicato, was an extortion and labor bribery operation known as the "Club."  The Club was a cooperative venture among the families, and the Commission set rules and settled major disputes arising out of the scheme.  The Club's rules included the rule that only concrete construction companies selected by the Commission would be awarded concrete construction contracts worth more than $2 million in New York City, as well as the rule that any construction company the Commission selected would be required to pay the Commission two percent of the construction contract price.  Salerno, 868 F.2d at 529.  The second scheme, a loansharking conspiracy, only involved defendants Anthony Corallo and Salvatore Santoro.  Id.  The final scheme involved the murders of Carmine Galante and two associates on July 12, 1979, allegedly as part of a Commission plan to end an internal Bonanno family dispute.  Id.  Indelicato was the only defendant charged with the murders as predicate acts in the RICO counts.

On January 30, 1986, Judge Richard Owen ruled on a number of motions filed on behalf of various defendants in the Commission case.  United States v. Salerno, No. 85 CR. 139 (RO),

---

al., No. S 84 Cr. 809 (the "Persico case"); see also United States v. Persico, 832 F.2d 705 (2d Cir. 1987).  It is not necessary to recount the full procedural history of the Persico case for this motion.

1986 WL 1450, at *1 (S.D.N.Y. Jan. 30, 1986).  Judge Owen denied
defendants' applications for a list of witnesses and turnover of
statements of prospective witnesses in light of allegations in
the indictment of threats and murder to accomplish Commission
goals.  Id.  He also denied defendants' request for
identification of "'individuals with information helpful to the
defense'" to the extent the request called for production beyond
that required under Brady v. Maryland, 373 U.S. 83 (1963), and
its progeny.  Salerno, 1986 WL 1450, at *2.  Finally, "[i]n the
framework of the allegations" of the case, Judge Owen denied
defendants' demand for disclosure of informants and undercover
agents, and noted that the "government has asserted its
recognition of its obligation under Brady and its progeny."  Id.

        During the eleven-week jury trial, a great deal of the
government's evidence consisted of recorded conversations.  The
government also presented live testimony, including testimony by
Angelo Lombardo, a former acting boss of the Cleveland La Cosa
Nostra family; Joseph Cantalupo, a former member of the Colombo
family; Fred DeChristopher, a cousin by marriage of Persico at
whose home Persico stayed while a fugitive from November 1984 to
February 1985; and Joseph Pistone, an undercover FBI agent who
successfully infiltrated the Bonanno family.  Salerno, 868 F.2d
at 534.  DeChristopher testified that Commission member Persico
had told him that he (Persico) had voted against the Galante

4

killing, which provided evidence that the Commission had taken a vote on the matter.  Id. at 533.

On November 19, 1986, Persico was convicted of (1) RICO conspiracy in violation of 18 U.S.C. § 1962(d) (1982); (2) substantive RICO acts, in violation of 18 U.S.C. § 1962(c) (1982); (3) conspiracy to commit extortion and twelve counts of extortion or attempted extortion, in violation of 18 U.S.C. § 1951(a) (1982); and (4) aiding and abetting six labor bribery violations, in violation of 29 U.S.C. § 186(b)(1) (Supp. IV 1986) and 18 U.S.C. § 2 (1982).  Id. at 527-28.[2]

On January 13, 1987, Judge Owen sentenced the defendants in the Commission case. (Transcript of Jan. 13, 1987 Sentencing Hearing ("Sentencing Tr."), attached as Ex. A to Gov't's Mem. of Law in Opp'n to Carmine Persico's Mot.).  As a preliminary matter, Judge Owen stated that he was not relying on the government's sentencing memorandum in determining any of the defendants' sentences.  (Id. at 14:20-24).  Prior to sentencing Persico, Judge Owen explained that there was "overwhelming evidence" that Persico was a member of the Commission and that the Commission "lives, succeeds on murder, violence and threats of murder and violence."  (Id. at 23:25-24:2; 25:1-2).  Judge

---

[2]  Judge Owen denied defendants' motions for a new trial.  See United States v. Salerno, No. SSS 85 CR. 139 (RO), 1987 WL 9693 (S.D.N.Y. Apr. 15, 1987).

Owen also noted that "[a]ccording to Mr. DeChristopher, [Persico] sanctioned the use of killing for appropriate circumstances, although in the case of Mr. Galante [Persico] apparently voted against it according to what [he] told Mr. DeChristopher." (Id. at 24:18-21). Judge Owen then sentenced Persico to consecutive twenty year sentences on five counts – a total of 100 years' imprisonment – and ordered the sentences on all other counts to run concurrently.[3] (Id. at 25:4-19).

On direct appeal, the Second Circuit affirmed Persico's conviction and sentence. Salerno, 868 F.2d at 543. Among other things, the Second Circuit rejected defendants' claim that the government violated its Brady obligations by failing to disclose reports suggesting that Philip Rastelli, not Carmine Galante, was the boss of the Bonanno family, because the undisclosed reports were not material. Id. at 541. The Second Circuit also rejected defendants' challenges to their sentences, finding that "[w]hile [the court] admit[s] that the one-hundred year sentences have a certain symbolic quality, [the court] cannot say that Judge Owen relied so heavily on abstract considerations of deterrence and so little on considerations of individual

---

[3]   Later in the sentencing hearing, Judge Owen gave Persico an opportunity to raise objections to the presentence report. Persico stated that he objected to the "bulk of the presentence report" but his only specific objection was to the word "compound." (Sentencing Tr. at 27:23-28:16).

circumstances as to amount to an abuse of his wide discretion in sentencing." Id. at 543.  The convictions in the Commission case became final on October 2, 1989, when the Supreme Court denied the petitions for writs of certiorari.  493 U.S. 811 (1989).

On April 16, 1991, Judge Owen denied Persico's motion to vacate his conviction pursuant to 28 U.S.C. § 2255.  Judge Owen rejected Persico's claim that his conviction in the Commission case violated his double jeopardy rights under Grady v. Corbin, 495 U.S. 508 (1990), as a result of Persico's prior conviction in the Persico case.  The Second Circuit affirmed Judge Owen's denial in United States v. Salerno, 964 F.2d 172, 180 (2d Cir. 1992).

On July 13, 2015, Persico filed a motion to vacate his 100-year sentence pursuant to former Federal Rule of Criminal Procedure 35(a) (1985) ("former Rule 35").[4]  Persico contends that his sentence is substantively unreasonable under the Sixth Amendment, illegal under the Due Process Clause of the Fifth Amendment, and "constitutionally defective" as a result of the

---

[4]  The following abbreviations are used herein for the parties' memoranda of law: Memorandum of Law in Support of Carmine Persico's Motion Pursuant to Fed. R. Crim. P. 35(a) ("Def. Br.") (Dkt. No. 359); Government's Memorandum of Law in Opposition to Carmine Persico's Motion Pursuant to Fed. R. Crim. P. 35(a) ("Gov't Br."); and Defendant's Reply Memorandum ("Reply Br.") (Dkt. No. 363).

government's alleged failure to disclose exculpatory
information. (See Def. Br. 1). The government filed a
memorandum of law in opposition to the Motion on September 8,
2015, and the Motion was fully briefed when Persico submitted
his reply on September 16, 2015. Persico also filed a letter,
dated March 15, 2016, requesting a status conference. (Dkt. No.
364).

## II. Discussion

### A. Applicable Legal Standard

Persico seeks relief pursuant to former Federal Rule of
Criminal Procedure 35(a), which is applicable to offenses
committed before November 1, 1987. Persico was indicted on June
25, 1985, so he is covered by former Rule 35. See United States
v. Blackmer, 909 F.2d 66, 67 (2d Cir. 1990), vacated on other
grounds, 499 U.S. 944 (1991). Former Rule 35 provided:

> (a) Correction of Sentence. The Court may
> correct an illegal sentence at any time and
> may correct a sentence imposed in an illegal
> manner within the time provided herein for the
> reduction of sentence.
>
> (b) Reduction of Sentence. A motion to reduce
> a sentence may be made, or the court may reduce
> a sentence without motion, within 120 days
> after the sentence is imposed or probation is
> revoked, or within 120 days after receipt by
> the court of a mandate issued upon affirmance
> of the judgment or dismissal of the appeal, or
> within 120 days after entry of any order or
> judgment of the Supreme Court denying review
> of, or having the effect of upholding, a

> judgment of conviction or probation revocation
>
> . . . .

Fed. R. Crim. P. 35 (1985).[5]

"[A]s the Rule's language and history make clear, the narrow function of [former] Rule 35 is to permit correction at any time of an illegal sentence, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence." Hill v. United States, 368 U.S. 424, 430 (1962). "Sentences subject to correction as 'illegal' under former Rule 35 are 'those that the judgment of conviction did not authorize.'" United States v. Lika, 344 F.3d 150, 153 (2d Cir. 2003) (per curiam) (citing United States v. Morgan, 346 U.S. 502, 506 (1954)). A sentence is not illegal under former Rule 35(a) if "[i]t is not 'in excess of a statutory provision or otherwise contrary to the applicable statute,' United States v. Huss, 520 F.2d 598, 602 (2d Cir. 1975), and its terms are not 'legally or constitutionally invalid in any other respect,'" Hill, 368 U.S. at 430. Id.

While former Rule 35 gave the court discretion to correct an illegal sentence or a sentence imposed in an illegal manner,

---

[5]  Former Rule 35 was amended following the passage of the Sentencing Reform Act, 98 Stat. 1987, which abolished federal parole. Rule 35(a) now provides that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).

it does not require that the court do so.  Shakur v. United
States, 44 F. Supp. 3d 466, 474 (S.D.N.Y. 2014); see also United
States v. Rivera, 376 F.3d 86, 91-92 (2d Cir. 2004) (noting that
the "wide latitude" offered by former Rule 35(a) was not
required by the Due Process Clause).  Under former Rule 35(a), a
court may correct an illegal sentence at any time, whereas a
sentence imposed in an illegal manner "can be reduced only
within 120 days of either the date of sentence or that of the
last appellate disposition having the effect of upholding or
denying review of the conviction."  United States v. DeLutro,
617 F.2d 316, 317 (2d Cir. 1980).

      **B. Analysis**

          **1. The Court Will Not Alter Persico's Sentence Under
                Former Rule 35**

Persico argues that his 100-year sentence should be vacated
pursuant to former Rule 35(a).  Under former Rule 35(a), "even
if a sentence may be arguably 'illegal,' modification by the
court is permissible (i.e., within the court's discretion), as
opposed to mandatory."  Shakur, 44 F. Supp. 3d at 475; see also
United States v. Finkielstain, 293 F. App'x 62, 63 (2d Cir.
2008) (summary order) (affirming district court's exercise of
its discretion not to review a sentence pursuant to former Rule
35(a) because approximately eighteen years had elapsed); Rivera,
376 F.3d at 91-92.

Under the circumstances of this case, the Court exercises its discretion to decline to alter Persico's sentence pursuant to former Rule 35(a).  The Second Circuit has affirmed Persico's conviction and sentence, which became final on October 2, 1989, as well as Judge Owen's denial of Persico's motion to vacate his conviction pursuant to 28 U.S.C. § 2255.  Persico waited more than twenty three years to challenge the legality of his sentence.  In light of this passage of time, "[p]rudential considerations" support the Court's decision not to alter Persico's sentence.  Finkielstain, 293 F. App'x at 63; see also United States v. Woods, 986 F.2d 669, 674-75 (3d Cir. 1993) (noting that "[o]ur legal system has a strong interest in the finality of adjudication" and that courts "are free to apply reasonable and prudential limitations on the correction of illegal sentences" under former Rule 35); cf. Herrera v. Collins, 506 U.S. 390, 426 (1993) (O'Connor, J., concurring) ("At some point in time, the State's interest in finality must outweigh the prisoner's interest in yet another round of litigation.  In this case, the point was well short of eight years.").  Although our inquiry could end here, for the sake of completeness, I will address Persico's arguments, which are also unavailing.

## 2. Persico's Motion Also Fails on the Merits

Persico argues that his sentence is illegal, and thus may be corrected under former Rule 35(a), because his sentence is substantively unreasonable under the Sixth Amendment, illegal under the Due Process Clause of the Fifth Amendment, and "constitutionally defective" as a result of the government's alleged failure to disclose exculpatory information.  (See Def. Br. 1).  I must also conclude that there is no valid ground upon which to find Persico's sentence illegal under former Rule 35(a), which is an alternative basis for the Court's denial of this motion.

### i. Persico's Sentence Is Not Illegal Under the Sixth Amendment

Persico argues that his sentence is illegal under former Rule 35(a) because it depends on judge-found facts to survive substantive reasonableness review in violation of the Sixth Amendment.  (See Def. Br. 49-50).  Specifically, Persico asserts that judge-found facts relating to his involvement in violent crimes or murders (i.e. the Carmine Galante murder) formed the basis of his sentence.  (Id. at 50-51).  Persico concedes, however, that his sentence falls within the statutory range of penalties available for his convictions.  (See id. at 51).

As an initial matter, substantive reasonableness review is inapplicable in cases where the defendant's offenses pre-dated

the Sentencing Guidelines.[6]  See United States v. Cruz, 543 F.
App'x 117, 118 (2d Cir. 2013), as amended (Dec. 2, 2013)
(summary order).  In Cruz, the Second Circuit rejected
defendant's argument that his pre-Guidelines sentence was
substantively and procedurally unreasonable, because the
appellate review standard of United States v. Booker, 543 U.S.
220 (2005), and its progeny is inapplicable in a pre-Guidelines
case.  Cruz, 543 F. App'x at 118; see also Guzman v. United
States, 404 F.3d 139, 141 (2d Cir. 2005) (holding that Booker
does not apply to cases on collateral review where the
defendant's conviction was final as of January 12, 2005).
Instead, in a pre-Guidelines case, the sentencing court has
"''wide discretion in imposing sentence, and . . . if a sentence
is within the permissible statutory limits and it does not
appear that the court took into account any improper factor, the
sentence may not be reviewed on appeal.''"  Cruz, 543 F. App'x

---

[6]  Persico's Sixth Amendment claim also fails because he relies
entirely on a dissent from a denial of certiorari that is not
the law.  Compare Jones v. United States, 135 S. Ct. 8 (2014)
(Mem) (Scalia, J., dissenting), with United States v. Jones, 744
F.3d 1362, 1369 (D.C. Cir.), cert. denied, 135 S. Ct. 8 (2014)
(finding that Justice Scalia's argument is not the law and "[n]o
Supreme Court majority has ever recognized the validity of such
challenges"); see also Alleyne v. United States, 133 S. Ct.
2151, 2161 n.2 (2013) (noting that the Sixth Amendment does not
govern factfinding used to guide judicial discretion in
selecting a punishment within limits fixed by law).

at 118 (citing <u>United States v. Ruggiero</u>, 928 F.2d 1289, 1306

(2d Cir. 1991) (citation omitted)).

As in <u>Cruz</u>, I find that substantive reasonableness review

is inapplicable here, because Persico's offenses pre-dated the

Sentencing Guidelines.  <u>Id.</u>  Under pre-Guidelines law, there is

no basis to disturb Persico's sentence; Persico's sentence is

within the statutory limits and it does not appear that the

court took into account any improper factor.  To the extent that

Persico argues that Judge Owen improperly found that he engaged

in uncharged criminal conduct, the record does not support his

claim.  Contrary to Persico's claim, Judge Owen did not find

that Persico succeeded in being an upper member of the

Commission by engaging in acts of violence and threats of

murder.  (Def. Br. 49-50 (quoting Sentencing Tr. at 24-25)).  In

contrast, Judge Owen stated, "for years you (Persico) have been

profiting by being an upper member of this echelon, on the board

of directors that lives, succeeds on murder, violence and

threats of murder and violence . . . ."  (Sentencing Tr. at

24:24-25:2).  Also, Judge Owen – making no finding and placing

no reliance on proof regarding the murder of Carmine Galante –

described some of the evidence underlying the jury's verdict:

"[a]ccording to Mr. DeChristopher, you (Persico) sanctioned the

use of killing for appropriate circumstances, although in the

14

case of Mr. Galante you apparently voted against it according to what you told Mr. DeChristopher." (<u>Id.</u> at 24:18-21).

In a pre-Guidelines case, the sentencing court has "''wide discretion in imposing sentence.''" <u>Cruz</u>, 543 F. App'x at 118 (citations omitted). Persico previously challenged his sentence on direct appeal, and the Second Circuit upheld Persico's sentence, finding that Judge Owen did not abuse his "wide discretion" in sentencing Persico. <u>Salerno</u>, 868 F.2d at 543. I find no basis for this Court to revisit that conclusion. Accordingly, the previously imposed sentence was a proper exercise of the Court's ample discretion under pre-Guidelines law.

For these reasons, Persico's claim under former Rule 35(a) that his sentence is substantively unreasonable under the Sixth Amendment is unavailing and an evidentiary hearing on this claim is unnecessary.

### ii. Persico's Sentence Is Not Illegal Under the Due Process Clause of the Fifth Amendment

Persico argues that his sentence is illegal under former Rule 35(a) because the Court relied on false information concerning his involvement in a number of murders, which violated the Due Process Clause of the Fifth Amendment. (Def. Br. 55). Specifically, Persico contends that "the Court found that Mr. Persico was the boss of the Colombo family since 1972

and had participated in a number of uncharged acts of violence and murder, including partaking in a conspiracy with other 'Commission' members to kill Carmine Galante in 1979." (Id. at 51-52).

Former Rule 35(a) expressly distinguishes illegal sentences, which a court may correct at any time, and sentences imposed in an illegal manner, which a court may only correct within 120 days of either the date of sentence or the date the conviction became final. See DeLutro, 617 F.2d at 317. If more than 120 days has elapsed since the last triggering event, then the Court lacks jurisdiction to correct a sentence imposed in an illegal manner under former Rule 35(a). See Garvin v. United States, 882 F. Supp. 68, 70 (S.D.N.Y. 1995) (citing United States v. Addonizio, 442 U.S. 178, 189 (1979)). A claim under former Rule 35(a) that a sentence "violated the defendant's due process right not to be sentenced on the basis of inaccurate information" is a claim that the sentence was imposed in an illegal manner, which is subject to the 120-day limitation. United States v. Mescaine-Perez, 849 F.2d 53, 58 (2d Cir. 1988); see also DeLutro, 617 F.2d at 317-18 (affirming district court's decision that former Rule 35(a) claim that sentence was based on inaccurate information was time-barred because more than 120 days elapsed).

16

Persico's claim under former Rule 35(a) that the sentencing judge relied on inaccurate information in violation of the Due Process Clause is plainly a claim that his sentence was imposed in an illegal manner.  See Mescaine-Perez, 849 F.2d at 58.  Under former Rule 35(a), this Court may only correct a sentence imposed in an illegal manner within 120 days of either the date of sentence or the date the conviction became final.  DeLutro, 617 F.2d at 317.  Because the 120-day period passed decades ago, Persico's due process claim under former Rule 35(a) is time-barred and this Court lacks jurisdiction to consider his claim. See Garvin, 882 F. Supp. at 70.

Even if Persico's due process claim was permissible under former Rule 35(a) (it is not), there is no basis to find that the sentencing judge relied on the disputed allegations.  "For a defendant to prove that his due process rights were violated by a sentencing court's reliance on false or unreliable information . . . the sentencing judge's reliance on the disputed information must affirmatively appear in the record." United States v. Persico, No. S 84 CR. 809 (JFK), 1993 WL 385799, at *9 (S.D.N.Y. Sept. 29, 1993) (rejecting Persico's claim that the sentencing judge relied on false information in the government's sentencing memorandum because Persico did not point to anything in the record that supported his claim).  In this case, Judge Owen stated that he was not relying on the government's

17

sentencing memorandum in determining any of the defendants'
sentences.[7] (See Sentencing Tr. 14:20-24).  Because there is no
indication in the record that Judge Owen relied on the disputed
allegations, Persico's due process claim fails.

For these reasons, Persico's claim under former Rule 35(a)
that the sentencing judge relied on inaccurate information in
violation of the Due Process Clause is unavailing and an
evidentiary hearing on this claim is unnecessary.

### iii. Persico's Sentence Is Not Illegal Under Brady and Its Progeny

Persico argues that his sentence is "constitutionally
defective" as a result of the government's failure to disclose
favorable information under Brady v. Maryland, 373 U.S. 83
(1963), and its progeny.  (Def. Br. 1).  According to Persico,
the purported Brady material demonstrates "his actual innocence
of the uncharged murders that were the predicate for his de
facto 100-year sentence," including the Carmine Galante murder,
and that "he was innocent of the pivotal allegation in the

---

[7]  To the extent Persico argues that Judge Owen relied on
inaccurate information in the presentence report, Persico fails
to identify any information in the presentence report that Judge
Owen relied on.  Furthermore, Persico waived any objection to
the presentence report at his sentencing.  (See Sentencing Tr.
27:20-28:16; see also United States v. Helmsley, 941 F.2d 71, 98
(2d Cir. 1991) (finding that "if a defendant fails to object to
certain information in the presentence report, she is barred
from contesting the sentencing court's reliance on that
information, unless such reliance was plain error")).

'Commission Case' – that he was the 'boss' of the Colombo crime family and a member of the Mafia's 'Commission' between 1972 to 1985." (Id. at 2; see also Def. Br. Exs. 1-44).  Specifically, Persico asserts that the government "possessed, but failed to disclose, highly exculpatory evidence proving that [] [he] was never the 'boss' of the Colombo family; [] [he] did not authorize others to act as 'boss' of the Colombo family; [] the 'Commission' had appointed another 'boss' of the Colombo family; and [] [he] did not aid or abet his co-defendants . . . in any charged RICO offenses." (Def. Br. 2).  Persico also claims that the government "failed to disclose the identity of at least three or more individuals identified in its reports that were eyewitnesses to the charged RICO offenses." (Id. at 58). Finally, Persico contends that the government "concealed information relating to the credibility of its investigation and key trial witnesses," including DeChristopher and Agent Pistone. (Id. at 3).

"It is well established that a motion under [former] Rule 35 can only be used to correct an illegal sentence, and not to correct trial errors or errors in other pre-sentencing proceedings."  United States v. Schiff, 876 F.2d 272, 274 (2d Cir. 1989) (emphasis added); see also Hill, 368 U.S. at 430. "Sentences subject to correction as 'illegal' under former Rule 35 are 'those that the judgment of conviction did not

authorize.'"  <u>Lika</u>, 344 F.3d at 153 (citation omitted).

Therefore, it is improper to shoehorn claims that challenge the

underlying conviction, such as <u>Brady</u> claims, into a former Rule

35(a) motion.  <u>See</u> <u>id.</u> at 152 (finding that the court did not

need to reach the merits of substantive arguments in a former

Rule 35(a) motion that did not bear on the legality of

defendant's sentence); <u>United States v. Peltier</u>, 312 F.3d 938,

942-43 (8th Cir. 2002) (finding that claim under former Rule

35(a) concerning <u>Brady</u> violations failed because it did not

concern the legality of the sentence).  It is also "particularly

inappropriate" in a former Rule 35(a) motion to "[r]esort to

evidence outside the trial record."  <u>United States v. Torres</u>,

677 F. Supp. 2d 668, 671 n.3 (S.D.N.Y. 2009).

The law is clear that a former Rule 35(a) motion to correct

an illegal sentence is not the proper vehicle to assert <u>Brady</u>

violations.  <u>See Hill</u>, 368 U.S. at 430.  Persico's <u>Brady</u> claims

do not concern the legality of his sentence, which was plainly

authorized by the judgment of conviction.  <u>See Lika</u>, 344 F.3d at

152; <u>Peltier</u>, 312 F.3d at 942-43.  Instead, Persico's <u>Brady</u>

claims seek to introduce information outside the trial record

(Def. Br. Exs. 1-44) in order to mount a collateral attack on

the underlying judgment of conviction.  Because this is not a

proper subject of a former Rule 35(a) motion, I see no basis to

reopen Persico's conviction to address the merits of his <u>Brady</u>

claims.  See Lika, 344 F.3d at 152.  Under certain circumstances, it may be appropriate to treat Persico's claims brought pursuant to former Rule 35(a) as constituting a motion under 28 U.S.C. § 2255.  However, Persico has already filed a motion under § 2255, so in order to file a second § 2255 motion, he must first request authorization from the Court of Appeals pursuant to 28 U.S.C. § 2244(b)(3).  He has not done so.

Persico also argues that the government's failure to notify him of the identity of certain sources not only violated Brady, but "undercut [his] Sixth Amendment right to compulsory process for obtaining witnesses in his favor at both trial and during his sentencing hearing." (Def. Br. 59 n.32).  "To establish a violation of that right, the 'defendant must demonstrate that he was deprived of the opportunity to present a witness who would have provided testimony that was 'both material and favorable to his defense.''" United States v. Persico, 645 F.3d 85, 113 (2d Cir. 2011) (citation omitted).  Persico's compulsory process claim under former Rule 35(a) fails because the claim concerns alleged violations which are not disclosed by the record and which occurred, if at all, prior to sentencing.  See Lika, 344 F.3d at 152.  Further, Persico failed to make a "'plausible showing'" that the witnesses' testimony would have been material and favorable. Persico, 645 F.3d at 113 (citation omitted).

Even if Persico's Brady claim was permissible under former
Rule 35(a) (it is not), there is no basis to find that the
government violated its Brady obligations.  Under Brady, "'the
Government has a constitutional duty to disclose favorable
evidence to the accused where such evidence is 'material' either
to guilt or to punishment.'" United States v. Cacace, 796 F.3d
176, 183 (2d Cir. 2015) (per curiam) (citation omitted).
Evidence is material when "'there is a reasonable probability
that, had the evidence been disclosed to the defense, the result
of the proceeding would have been different.'" Strickler v.
Greene, 527 U.S. 263, 280 (1999) (citations omitted).  "A
'reasonable probability' of a different result is accordingly
shown when the government's evidentiary suppression 'undermines
confidence in the outcome of the trial.'" Kyles v. Whitley, 514
U.S. 419, 434 (1995) (citation omitted).  "[U]ndisclosed
impeachment evidence is not material in the Brady sense when,
although 'possibly useful to the defense,' it is 'not likely to
have changed the verdict.'" Persico, 645 F.3d at 111 (citation
omitted).

After carefully reviewing Persico's purported Brady
material, which is primarily internal government reports and

memoranda[8] (see Def. Br. Exs. 1-2, 5-39, 41-42), I conclude that the government did not breach its Brady obligations.  The government had no Brady obligation to turn over the undisclosed documents that were part of the FBI's investigatory work and contained "'preliminary, challenged, or speculative information.'"[9] United States v. Amiel, 95 F.3d 135, 145 (2d Cir. 1996) (citation omitted); see also Moore v. Illinois, 408 U.S. 786, 795 (1972) (noting that there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case").  I also find that the undisclosed documents, which primarily reported uncorroborated information from informants, were not "material" as there is no "reasonable probability" that had the documents been disclosed to the defense, the result of the trial would have been different.[10]  Strickler, 527 U.S. at

---

[8]  Persico states that in 2015, he received "some of the undisclosed FBI reports through requests made pursuant to the Freedom of Information Act (FOIA)."  (Reply Br. 3 n.1).

[9]  Several of Persico's exhibits contain posttrial statements, and the "government's Brady obligations do not cover such statements." United States v. Santos, 486 F. App'x 133, 135 n.1 (2d Cir. 2012) (summary order) (citing Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 68-70 (2009)).

[10]  In fact, several of the undisclosed documents that Persico submitted to the Court contain reports that Persico is the boss of the Colombo Family.  (See, e.g., Def. Br. Exs. 1, 32, 42 ("On 6/26/80, source advised that Thomas Di Bella is merely a figurehead in the Colombo Family and the actual boss is Carmine Persico")).

280.   Further, the purported impeachment evidence is "'not likely to have changed the verdict.'"   <u>Persico</u>, 645 F.3d at 111 (citation omitted).   The proper defendant was convicted by overwhelming evidence in a fair trial.   Nothing discovered since throws doubt upon this conclusion.

For these reasons, Persico's claim under former Rule 35(a) that his sentence is "constitutionally defective" as a result of the government's failure to disclose favorable information under <u>Brady</u> is unavailing.   There is also no basis to grant an evidentiary hearing on this claim, which would amount to a roving fishing expedition.

### Conclusion

For the foregoing reasons, Persico's motion is DENIED in all respects.   The Clerk of the Court is directed to close Docket No. 359.

**SO ORDERED.**

KEVIN THOMAS DUFFY
United States District Judge

Dated:     New York, New York
           June 24, 2016

24